IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ELIZABETH P. CROWDER,           )
                                )
            Plaintiff,          )
                                )
      v.                        )     1:04CV00537
                                )
JO ANNE B. BARNHART,            )
Commissioner of Social Security,)
                                )
            Defendant.          )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claims for Social Security disability insurance benefits and a period of disability. The Commissioner's denial decision became final on April 7, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge (ALJ). Plaintiff has filed a motion for summary judgment, defendant has filed a motion for judgment on the pleadings, and the administrative record has been certified to the Court for review.

## The Plaintiff

Plaintiff, who was 43 years old at the time of her hearing in front of the ALJ, has a high school equivalency education. Her past relevant work experience is as a cashier, housekeeper, clerk, shift leader (restaurant), and security guard. According to the ALJ, plaintiff alleged disability as of October 31, 2001, due to two herniated discs at L4-5 and L5-S1 with pain.

**Plaintiff's Issues**

Plaintiff has presented two issues to the Court for review. She argues that the ALJ erred in not finding that her lower extremity edema was a severe impairment. Plaintiff also contends the ALJ erred in assessing her credibility.

**Discussion**

In reaching a decision on plaintiff's claim, the ALJ followed the five-step analysis set out in the Commissioner's regulations. See 20 C.F.R. § 404.1520. Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Id. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering her age, education and work experience. Id.

The ALJ first found that plaintiff had not engaged in substantial gainful activity since the date of her alleged onset of disability (AOD). She then found that plaintiff suffered from the severe impairments of lumber degenerative disc disease ("DDD") with lower back pain; chronic obstructive pulmonary disease ("COPD"); a history of cerebral arteriovenous malformation, and tobacco abuse. The ALJ next decided that plaintiff's severe impairments did not

meet or medically equal the requirements of any listing in Appendix 1, Subpart P, Regulation Number 4.

The ALJ then determined that plaintiff had the residual functional capacity (RFC) to perform light work with postural and environmental limitations and a sit/stand option. She added that plaintiff was moderately limited in her ability to concentrate and remember detailed instructions. Based on this RFC, the ALJ concluded that plaintiff could not return to her past relevant employment. However, based on the testimony of a Vocational Expert, she found that plaintiff could perform jobs which existed in significant numbers in the national economy. Accordingly, the ALJ ruled that plaintiff was not disabled within the meaning of the Social Security Act.

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted), or evidence which "consists of more than a

mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

**Issue One**

Plaintiff's first issue for review is whether the ALJ erred in finding that plaintiff's lower extremity edema ("LEE") was not a severe impairment. An impairment is deemed severe only if it significantly limits a claimant's physical or mental abilities to perform "basic work activities." See 20 C.F.R. § 404.1520(c). Plaintiff argues persuasively that, when she suffers edema, it impairs her ability to work.

The ALJ found, however (Tr. at 15), that plaintiff's LEE did not meet the Act's durational requirement: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509. Plaintiff contends, in both her initial and Reply Briefs, that her LEE does, in fact, meet this requirement. The Court disagrees.

On January 9, 2003, plaintiff first reported problems with LEE to Dr. Mark Phillips, whom she saw for management of her lower back pain. (Tr. at 235) Dr. Phillips noted 1+ pitting edema.

Five days later, plaintiff visited Dr. Karen Chandler, her treating physician at Stokes Family Medical Center. (Tr. at 243) Plaintiff complained of excessive ankle swelling, with pain, for one week. Dr. Chandler observed 2+ pitting edema, but 2+ pulses

-4-

distally with positive capillary refill, no erythema, and no point tenderness. She prescribed Lasix, a diuretic.

When plaintiff returned to Dr. Chandler on January 31, 2003, her edema was somewhat improved. (See Tr. 244) The doctor advised plaintiff to elevate her feet and perform ankle pumping exercises, and she gave plaintiff a prescription for Demadex, also a diuretic.

Plaintiff saw Dr. Chandler two weeks later, on February 14, 2003, after an emergency room visit for gastroesophageal reflux disorder. (Tr. at 244) She told the doctor that her swelling had resolved, but that she was very sensitive to pain stimuli of her lower extremities. (Tr. at 245) Dr. Chandler found plaintiff's swelling to have decreased to 1+ and her lower extremities tender to palpation. She does not seem, however, to link plaintiff's pain complaints to her LEE, as she lists the pain assessment separately from that for edema, and mentions that plaintiff has an appointment with "pain management" the following week.[1]

When she next saw Dr. Phillips, on February 20, 2003, plaintiff complained of LEE but reported that it seemed to be improving. (Tr. at 234) He observed 1-2+ pitting edema.

Plaintiff's next doctor's appointment was not until March 14, 2003. (See Tr. at 246) She reported that her swelling had resolved initially but recurred 2 days previously. Dr. Chandler noted 3+ pitting edema, and increased plaintiff's dosage of Lasix and renewed her Demadex. When plaintiff returned for a follow-up

---

[1] Plaintiff's January 14, 2003 visit with Dr. Chandler appears to be the only one where she complained of both pain *and* LEE.

-5-

three days later, her weight had dropped 15 pounds and the swelling had decreased. (Tr. at 247) The doctor discontinued her Demadex prescription and replaced it with one for Spironolactone, also a diuretic.

When plaintiff saw Dr. Phillips on March 20, 2003, he observed "ongoing" LEE. (Tr. at 233) The following day, plaintiff told Dr. Chandler that her urine output had slowed to a trickle and she had increased edema, but she felt "much better." (Tr. at 248) The doctor noted only 1+ pitting edema, and decreased her Lasix dosage.

Upon her return to Dr. Chandler on April 7, 2003, plaintiff's edema was still at 1+, but the doctor concluded that it was "resolving," and again decreased the Lasix dosage. (Tr. at 249) Plaintiff would not seek further treatment for LEE-related complaints for another three and one-half months.

At plaintiff's next visit with Dr. Phillips, on April 17, 2003, he made no edema observation. (See Tr. at 232) On May 15, 2003, plaintiff asked Dr. Phillips to prescribe a motorized cart for her. (Tr. at 231) In declining her request, he included no discussion of her LEE. Plaintiff repeated visits with Dr. Phillips on June 25 and July 9 and, still, no edema observations were made. (See Tr. at 229-30)

Plaintiff returned to Dr. Chandler's practice on July 17, 2003, reporting that her LEE was "doing somewhat better." (Tr. at 250) The attending caregiver noted *no* edema, and did not include LEE among the diagnoses. Plaintiff was advised to continue her present medications, including Spironolactone and Lasix.

-6-

At plaintiff's next doctor's visit, with Dr. Phillips on August 6, 2003, there was noted only trace LEE, and again on successive visits of September 3 and October 1. (Tr. at 226-28) At none of these visits did plaintiff complain of pain or restriction of activities associated with edema.

Plaintiff returned to Dr. Chandler's practice on October 22, 2003, her first visit there since July 17. (See Tr. at 251) She complained of LEE that was painful and red, but only for the past week. According to plaintiff's medical records, this was her first experience of more than trace edema since April 7, 2003, some 6-1/2 months earlier. Moreover, plaintiff admitted that, a month earlier, she had decreased her dosage of Lasix and completely discontinued use of a second medication, Aldactone.

Despite plaintiff's description, the caregiver found only +1 pitting LEE but +2 pulses, although there was some erythema. Plaintiff was told to increase her Lasix dosage and restart the Aldactone. It was further recommended that plaintiff contact some named sources for financial assistance.

On October 29, 2003, plaintiff saw Dr. Chandler. (Tr. at 252) She was "doing better," with her edema decreasing at night, although there was "some swelling" during the day. (Id.) The doctor observed only trace pitting edema from plaintiff's mid-shin to her ankle. She advised plaintiff to continue her medications.

The Court agrees with plaintiff that her LEE is an ongoing issue, probably one that will last for more than 12 months. The Court disagrees, however, that this issue is one that either has

been or will continue to be "severe" for 12 continuous months. Her medical records clearly demonstrate that, when plaintiff takes the prescribed medications as prescribed, they control her LEE. The records further show that, when plaintiff suffered from pitting edema, her medical visits were frequent. Given this evidence, the Court doubts that plaintiff would have suffered pitting edema and not have returned to the doctor.[2] Accordingly, the Court dismisses the suggestion that plaintiff suffered "severe" LEE that was not reflected in the records.[3]

**Issue Two**

In her next issue for review, plaintiff contends that the ALJ mistakenly assessed her credibility. The determination of whether an individual is disabled by pain is a two-step process. First, the record must provide objective medical evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b). The Fourth Circuit Court of

---

[2]Although plaintiff expressed some concerns regarding costs (see, e.g., Tr. at 226, 251), she did not indicate that she no longer had medical insurance until October 1, 2003 (see Tr. at 226). Despite this, she saw Dr. Phillips on that date, and visited Dr. Chandler's practice both on October 22 and October 29, 2003. During her October 22nd visit, plaintiff was advised of two possible sources for assistance with her medical costs. (See Tr. at 251)

[3]Plaintiff even testified that, in January, "we got [the swelling] back down and I was okay for March, April, May, had a little bit in June, got it back down. And then it flared back up again in September." (Tr. at 56-57) Plaintiff's own testimony indicates that her LEE was not problematic for most of 6 out of 10 months.

-8-

Appeals has determined that, "for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ, however, found that plaintiff did *not* have a medically determinable impairment which reasonably could be expected to produce the actual subjective symptoms, in the amount and degree, which she alleged. (Tr. at 18-19)

Under Craig, "It is only *after* a claimant has met [this] threshold obligation . . . that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." 76 F.3d at 595 (citing 20 C.F.R. § 404.1529(c)(1)). Nevertheless, the ALJ proceeded to the step two evaluation, which must take into account "'all the available evidence,'" including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain; and any other evidence relevant to the severity of the impairment, as well as the claimant's statements. Id. (citing 20 C.F.R. § 404.1529(c)(2), (3)).

In proceeding with step two, the ALJ followed the instruction of the regulation:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. *We will consider whether there are any inconsistencies in the evidence and the extent to which there are any*

> *conflicts between your statements and the rest of the evidence,* including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as *consistent with the objective medical evidence and other evidence.*

20 C.F.R. § 404.1529(c)(4) (emphases added).

Thus, the ALJ correctly focused on the extent to which plaintiff's statements about her symptoms were inconsistent with the remainder of the record. The court specifically decided in Craig that a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" 76 F.3d at 595 (citing 20 C.F.R. § 404.1529(c)(4)).

The ALJ discussed (Tr. at 19) plaintiff's edema complaints (see Tr. at 55-56), but the records showed her LEE improved with proper medication usage (see Tr. at 244-51). Although plaintiff complained of recurring headaches (see, e.g., Tr. at 215, 228), a computed tomography scan was normal (Tr. at 210). She was diagnosed with COPD, but pulmonary function tests showed only

-10-

moderate obstruction (Tr. at 267), and plaintiff "had very little in the way of treatment or symptoms"[4] (Tr. at 20).

As to plaintiff's DDD, the ALJ cited Dr. Phillips' assessment that her MRI showed only mild degenerative changes at L3-4, L4-5, and L5-S1, which actually showed improvement from a previous scan. (Tr. at 20 (citing Tr. at 226)) A neurosurgeon opined that plaintiff should be treated nonsurgically. (Tr. at 169, 172)

The ALJ discussed the absence of emergency room visits for relief of severe pain. (Tr. at 20) Plaintiff received a prescription for a motorized cart (see Tr. at 229), but there was no evidence that one was medically necessary.[5] The ALJ focused on plaintiff's negative straight leg raising (see, e.g., Tr. at 171, 177, 184, 189, 212, 226, 231), but caregivers also consistently observed full muscle strength, intact gait, and strong and symmetric reflexes (see, e.g., Tr. at 169, 206, 212, 230, 236).

The ALJ also pointed to plaintiff's statements that support the credibility finding. (Tr. at 19-20) See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483, 34486 (consistency of the claimant's statements, both internally and with other information in the case record, is a strong indication of credibility). Plaintiff said that she experienced constant pain that was worsened upon prolonged sitting or standing. (Tr. at 37) Yet she told Dr.

---

[4] The ALJ added (Tr. at 19) that, despite repeated remonstrations (see, e.g., Tr. at 182, 246, 249), plaintiff continued to smoke.

[5] Although ultimately prescribed by a physician's assistant in another practice, Dr. Phillips denied plaintiff's request for a motorized cart. (Tr. at 231)

-11-

Phillips that sitting for short periods eased her pain (Tr. at 212, 233, 235), and one caregiver observed that plaintiff sat comfortably (Tr. at 184). (See also Tr. at 232 (noting that plaintiff could sit for "long periods")) The records show instances where medications lessened plaintiff's pain.[6] (See, e.g., Tr. at 145, 185, 212, 232)

The ALJ further noted (Tr. at 20) instances where plaintiff was noncompliant with her treatment (see Tr. at 182, 185, 226; see also Tr. at 184 (somewhat non-compliant with weight loss and exercise)). "The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). See also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure to follow medical and physical therapy regimen supported ALJ's inference that claimant's pain was not as severe as he asserted).

Also mentioned by the ALJ was the limited range of treatment options prescribed by plaintiff's caregivers. (Tr. at 20) They prescribed medications which, as discussed above, plaintiff tried with some success. Plaintiff attended two sessions of physical therapy. She completed the first and achieved all her long-range

---

[6] In her Reply Brief, plaintiff complains that "there is no indication that her pain ever completely resolved." (Pl.'s Reply at 7) However, a claimant's inability to work pain-free is not sufficient reason to support a finding of disability. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). See also Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989) (discomfort alone does not establish disability).

-12-

goals. (See Tr. at 158) The physical therapist terminated plaintiff's second session secondary to a lack of contact from plaintiff and no further doctor's orders, although short term goals were met. (Tr. at 145)

Plaintiff also tried steroid injections which, contrary to her later disavowals (see, e.g., Tr. at 54, 213), provided substantial relief (see Tr. at 174, 215, 228). As the ALJ pointed out, no caregiver suggested a TENS unit, back brace, or other such device. (Tr. at 20) Conservative treatment is an indication of the lack of severity of a claimant' condition. See Jenkins v. Chater, 76 F.3d 231, 233 (8th cir. 1996); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Overall, the Court finds substantial evidence to support the ALJ's credibility finding.

Plaintiff goes to great lengths to present the record in a manner which supports her credibility, but the Court finds her argument of no moment. "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth." Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001) (citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996)).

> The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference.

-13-

White v. Massanari, 271 F.3d 1256, 1262 (10th Cir. 2001). See also Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004) ("as a factual finding, credibility determinations are due special deference"); Reefer v. Barnhart, 326 F.3d 376, 380 (3rd Cir. 2003) (according deference "to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor"); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) ("The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard.").

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for judgment on the pleadings or summary judgment (docket no. 12) be denied, that defendant's motion for judgment on the pleadings (docket no. 14) be granted, and that Judgment be entered dismissing this action.

_/s/ Russell A. Eliason_
**United States Magistrate Judge**

August 17, 2005